FILED
09/22/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 16, 2025

## STATE OF TENNESSEE v. MIKAL B. MORROW

**Appeal from the Circuit Court for Montgomery County**
**No. CC22-CR-1115    Robert T. Bateman, Judge**

_____

### No. M2024-01505-CCA-R3-CD

_____

The Defendant, Mikal B. Morrow, appeals the trial court's revocation of his effective six-year probationary sentence for aggravated assault by strangulation, false imprisonment, and interference with a 911 call.  On appeal, he alleges that (1) the State failed to prove by a preponderance of the evidence that he violated the terms of his probation and (2) the trial court abused its discretion by fully revoking his probation after finding the Defendant had absconded.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Mitchell A. Raines (on appeal), Franklin, Tennessee, and Joseph Price (at revocation hearing), Clarksville, Tennessee, for the appellant, Mikal B. Morrow.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Robert J. Nash, District Attorney General; and Crystal M. Morgan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

On July 19, 2023, the Defendant pled guilty to aggravated assault by strangulation, false imprisonment, and interference with a 911 call.  *See* Tenn. Code Ann. §§ 39-13-102(a)(1)(A)(iv), -302; 65-21-117.  Pursuant to the plea agreement, the Defendant received an effective sentence of six years with all but thirty days to be served on supervised probation.

On August 30, 2023, the trial court issued a violation of probation warrant, wherein the Defendant's probation officer alleged that the Defendant had committed a zero tolerance violation by absconding and that he had committed additional violations by failing to provide documentation of lawful employment, failing to provide a current address, failing to report, and testing positive for marijuana. The Defendant was arrested on January 10, 2024. On April 22, 2024, an amended warrant was filed, alleging that the Defendant had been charged with a new Class A misdemeanor, assault, while incarcerated in the Montgomery County Jail.

A probation violation hearing was held on October 5, 2024. Officer Brittany Clark with the Tennessee Department of Correction ("TDOC") testified that the Defendant completed his initial probation intake on July 25, 2023. During that meeting, Officer Clark informed the Defendant that she would be his probation officer, that he was supposed to call her if he changed his address, and that he was supposed to call her to schedule their next meeting.[1] She never saw or heard from the Defendant again after this. She called the phone number that he had provided and left a voicemail. She also texted this number. The Defendant never answered or returned these communications. Officer Clark testified that, ordinarily, she would have made a home visit, but the Defendant had only provided the probation office with a Kentucky address, and she was not allowed to conduct out-of-state home visits. Using a computer database, Officer Clark located a potential address for the Defendant in Alabama, but she was likewise unable to conduct a home visit to that address. She confirmed on cross-examination that she had no contact with the Defendant after his intake meeting, even after the violation warrant for this matter was issued.

Following Officer Clark's testimony and arguments from the parties, the trial court found by a preponderance of the evidence that the Defendant had violated the terms of his probation by absconding from supervision, failing to provide documentation of employment, failing to contact his probation officer as instructed, and failing to report and provide the information necessary for probation to perform home and employment site visits.[2] The trial court then reopened the proof to determine the consequence for the Defendant's violation. The State offered no additional proof, but the Defendant elected to testify.

---

[1] The Defendant tested positive for marijuana during his intake interview, but Officer Clark conceded that she did not know if the Defendant had used marijuana before or after being placed on probation.

[2] As to the drug screen violation alleged in the warrant, the trial court found that the State had failed to meet its burden and did not consider it in its revocation determination.

The Defendant testified that his current address was in Kentucky and that this was the address he had provided to the probation office. He stated that he and the probation office had discussed the possibility of transferring his supervision to Kentucky, but he did not know whether the transfer paperwork was ever completed. The Defendant did not have any family in Tennessee, but he had been accepted into Adult-Teen Challenge, an in-patient treatment program, in Memphis. The Defendant acknowledged that there was a hold against him from Kentucky for a pending failure to appear charge, which he would need to address before going into the Adult-Teen Challenge program.

Following argument of the parties as to the consequence that should be imposed, the trial court explained that "[t]he primary reason" for its finding of a violation "is that [the Defendant] would not report, and the court views that, based upon the facts and findings that it made earlier, that [the Defendant] is an absconder." The trial court noted "that prior to his case being settled, [the Defendant] failed to appear at least once in [the trial] court, and [it took] notice that everybody agree[d] that there[] was a hold on [the Defendant] out of Kentucky for another failure to appear." Furthermore, the trial court found "measures less restrictive than confinement [had] been recently applied [to the Defendant] and [had] been unsuccessful," and that "[the Defendant] ha[d] never been able to comply with reporting or other aspects of supervision," so "it [had] no alternative but to find him in violation and revoke his probation and order him to serve his sentence."

The Defendant filed a timely notice of appeal.

## II.     ANALYSIS

On appeal, the Defendant contends that (1) the State did not prove by a preponderance of the evidence that he violated any terms of his probation and (2) the trial court abused its discretion by fully revoking his probation. The State responds that the trial court found by a preponderance of the evidence that the Defendant violated the terms of his probation by absconding and properly exercised its discretion by revoking the Defendant's probation. We agree with the State.

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical

conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If a trial court fails to state its findings and reasoning for the revocation on the record, appellate courts may conduct a de novo review if the record is sufficiently developed, or the appellate court may remand the case for the trial court to make such findings. *Dagnan*, 641 S.W.3d at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

Probation revocation is a two-step consideration requiring trial courts to make two distinct determinations as to (1) whether to revoke probation and (2) what consequences will apply upon revocation. *Dagnan*, 641 S.W.3d at 757. No additional hearing is required for trial courts to determine the proper consequences for a revocation. *Id.* The trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2021)).

"The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id.* Notwithstanding subdivision (d)(1), the probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022). A technical violation "means an act that violates the terms or conditions of probation but does not constitute" an enumerated non-technical violation. Tenn. Code Ann. § 40-35-311(g). A trial court may not revoke a defendant's probation and suspension of sentence for a felony offense, temporarily or otherwise, based upon one instance of a technical violation. *Id.* § -311(d)(2).

The following are classified as non-technical violations: a defendant's commission of a new felony or a new Class A misdemeanor, a zero tolerance violation as defined by the Department of Correction community supervision matrix, absconding, or contacting the defendant's victim in violation of a condition of probation. *Id.* § -311(e)(2). Once a trial court determines that a defendant has committed a non-technical violation of probation, the trial court may: (1) order confinement for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on

appropriate modified conditions; or (5) resentence the defendant for the remainder of the unexpired term to a sentence of probation.  *See id.* §§ -308(c), -310, -311(e)(2).

## A.    The Violation Determination

The Defendant argues that the trial court's finding that he violated his probation was not supported by sufficient evidence.  In arguing this point, the Defendant focuses on whether the State proved by a preponderance of the evidence that the Defendant committed technical violations of his probation.  As the State notes, this is not relevant because the trial court revoked probation on the basis of the Defendant's absconding, a non-technical violation.

This court has previously held that "to abscond" means "[t]o hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process."  *State v. Rand*, 696 S.W.3d 98, 104 (Tenn. Crim. App. 2024) (quoting *State v. Wakefield*, No. W2003-00892-CCA-R3-CD, 2003 WL 22848965, at *1 (Tenn. Crim. App. Nov. 25, 2003)).  As such, absconding goes "beyond a single missed meeting where the probationer continues to report," but rather it refers to "the probationer's intent to avoid supervision more generally."  *Id.*  To find that a defendant subject to probation has absconded, this court has previously considered several factors, including "the extent to which the probationer has failed to use reasonable efforts to return contact or submit to supervision after knowledge (or a belief) that supervision has been attempting to communicate with the probationer" and "the length of time that the probationer has intentionally or knowingly remained out of contact with supervision."  *Id.* at 104-05 (citations omitted).

In the instant case, the Defendant did not make any effort to return his probation officer's contact or submit to supervision after she attempted to communicate with him at the phone number he had provided.  *See id.* at 104; *State v. Taylor*, No. E2023-00791-CCA-R3-CD, 2024 WL 1526109, at *5 (Tenn. Crim. App. Apr. 9, 2024) (affirming trial court's finding that the defendant absconded when, among other reasons, the defendant did not attempt to contact his probation officer), *no perm. app. filed*.  After the Defendant failed to call Officer Clark as she had instructed, she called him, left him a voicemail, and sent him a text message.  He did not return any of these communications.  The Defendant suggests the number of Officer Clark's attempts to contact him were inadequate.  The Defendant is woefully incorrect.  "Probation is [a] privilege or act of grace which may be granted to a defendant who is eligible and worthy of this largesse of the law."  *State v. Huff*, 760 S.W.2d 633, 636 (Tenn. Crim. App. 1988) (citing *Stiller v. State*, 516 S.W.2d 617, 620

- 5 -

(Tenn. 1974)).  The Defendant, not Officer Clark, bore the entire responsibility of ensuring that he complied with the terms of this act of grace.

Instead of reporting to his probation officer, the Defendant remained out of contact with Officer Clark for almost a month before his probation officer sought the issuance of a violation warrant and for more than four months thereafter.  *See Rand*, 696 S.W.3d at 105 (noting that the length of time a probationer has knowingly remained out of contact with his probation officer can be considered by the court when determining whether a defendant absconded).  In fact, the Defendant did not contact Officer Clark at all prior to being served with the violation of probation warrant.  This conduct clearly goes "beyond a single missed meeting" and points instead to the Defendant's "intent to avoid supervision more generally."  *Id.* at 104.  The trial court did not abuse its discretion by finding that the Defendant violated his probation by absconding.

## B.      The Consequence Determination

The Defendant also challenges the consequence imposed by the trial court for his violation of probation.  Again focusing only on the discrete rules violations listed in the revocation affidavit, report, and warrant, the Defendant contends that the trial court abused its discretion by revoking his probation in full because the rule violations alleged were, at most, technical violations.  As we have held, however, the trial court correctly found that the Defendant had absconded, a statutory non-technical violation, and the trial court thus had the authority to order incarceration as a consequence for the probation violation.  *See* Tenn. Code Ann. § 40-35-311(e)(2).

The Defendant analogizes the present case to *Munn*, alleging that the trial court collectively labeled multiple technical violations as absconding.  *See State v. Munn*, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *4 (Tenn. Crim. App. Mar. 23, 2023).  Respectfully, the Defendant misreads *Munn*.  The fatal flaw in *Munn* was not the aggregation of multiple technical violations into a non-technical violation; instead, the revocation order in *Munn* was reversed because the trial court revoked the defendant's probation for absconding when absconding had not been specifically alleged in the violation of probation warrant, thus depriving the defendant of the notice required under due process principles.  *Id*.  Such is not the case here.  All of the violation paperwork in this case—the violation of probation report, the officer's affidavit, and the arrest warrant itself—clearly alleged that the Defendant had absconded, a zero tolerance violation.  Thus, the Defendant's reliance on *Munn* is misplaced.

As absconding is a non-technical violation, the trial court was permitted to revoke the Defendant's probation. *See* Tenn. Code Ann. § 40-35-311(e)(2). The Defendant does not seem to challenge whether the trial court made the requisite findings as to its reasoning regarding the consequence imposed. Regardless, we conclude the trial court provided sufficient reasoning for ordering confinement, having found that "measures less restrictive than confinement [had] been recently applied [to the Defendant] and [had] been unsuccessful" in that the Defendant "ha[d] never been able to comply with reporting or other aspects of supervision." *See State v. Sanders*, No. M2024-00536-CCA-R3-CD, 2025 WL 1420541, *7 (Tenn. Crim. App. May 16, 2025) (concluding that the trial court's consideration of the defendant's lack of success on probation was sufficient support for its imposition of incarceration as the consequence for the violation), *perm. app. denied* (Tenn. Sep. 10, 2025). Accordingly, we conclude the trial court did not abuse its discretion by revoking probation and imposing confinement in this case.

### III.    CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE

- 7 -